Case 2:21-cv-00065-RSP Document 1-5 Filed 02/25/21 Page 1 of 13 PageID #: 111
Filed 12/18/2020 4:04 PM
Gwen Ashworth
District Clerk
Morris County, Texas
By Taylor Byrd
Deputy

CAUSE NO. 27012

| | | |
|---|---|---|
| FREDERICK HOPKINS INDIVIDUALLY | § | IN THE DISTRCT COURT |
| AND AS A REPRESENTATIVE OF THE | § | |
| ESTATE OF JUESTENE NEAL, | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | |
| | § | ____JUDICIAL DISTRICT |
| | § | |
| | § | |
| J. ORI, LLC D/B/A THE SPRINGS | § | |
| | § | |
| *Defendants.* | § | MORRIS COUNTY, TEXAS |

## PLAINTIFFS' ORIGINAL PETITION
## & FIRST REQUEST FOR WRITTEN DISCOVERY

COMES NOW Frederick Hopkins, Individually and as a Representative of the Estate of Juestene Neal, (hereinafter referred to as "Plaintiffs") and brings this cause of action against J. ORI, LLC D/B/A The Springs (hereinafter referred to as "Defendants").

### A. DISCOVERY CONTROL PLAN

1. Plaintiffs intend to conduct discovery under Level 3 of Texas Rule Of Civil Procedure 190.4.

### B. PARTIES

2. Plaintiff, Frederick Hopkins is an individual and at all relevant times was a resident of Morris County, Texas. At the time of her injuries, Juestene Neal was a resident of Morris, Texas.

3. Defendant J. ORI, LLC D/B/A The Springs, located at 704 Taylor St, Hughes Springs, TX 75656, may be served with process through its registered agent, Timothy C. Thornton, located at 704 Taylor St, Hughes Springs, TX 75656. Defendant owned, managed, operated, supervised and/or staffed the rehabilitation center at which Juestene Neal was a resident in 2020.

CERTIFIED TRUE AND CORRECT COPY CERTIFICATE
THE STATE OF TEXAS
COUNTY OF MORRIS
The above and forgoing is a true and correct photographic copy of the original on file and on record in my office
Attest Feb 23 2021 AD
Gwen Ashworth, District Clerk
By_____ Deputy

4. To the extent that the above-named Defendants are conducting business pursuant to a trade name or assumed name, then suit is brought against it pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure and Plaintiff hereby demands that upon answering this suit, that they answer in their correct legal name and assumed name.

### C. JURISDICTION AND VENUE

5. Plaintiffs affirmatively plead that this Court has jurisdiction because the damages sought are in excess of the minimum jurisdictional limits of the Court. Furthermore, all of the causes of action asserted in this case arose in the State of Texas, and all of the parties to this action are either residents of the State of Texas or conduct business in this State and committed the torts that are the subject of this suit in whole or in part in Texas, as hereafter alleged in more detail. Therefore, this Court has both subject matter and personal jurisdiction over all of the parties and all of the claims.

6. Pursuant to Section 15.002(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE (CPRC), venue is proper in Morris County because Defendants conducted business in Morris County at all relevant times and all or a substantial part of the events or omissions giving rise to the claim occurred in Morris County, Texas and no mandatory venue provision applies.

7. At all times, the Plaintiff was treated by the Defendants in Morris County, Texas

### D. FACTS

8. Juestene Neal became a resident at The Springs, believed to be owned and operated by Defendants J. ORI, LLC D/B/A The Springs (hereinafter "The Springs"), at all relevant times as alleged herein. She was admitted into The Springs in 2017. At all relevant times, The Springs, was required to provide caregiver and related services to assist Juestene Neal,

with her activities of daily living, and rehabilitation. Defendants owned, managed, operated, supervised and/or staffed the rehabilitation center at which Juestene Neal became a resident. At the time of admission to The Springs, Juestene Neal had certain comorbidities that required skilled nursing care including, but not limited to, vulnerabilities that required nursing care.

9. Defendants knew of the existence of Juestene Neal's comorbidities at the time of her admission, and represented to Plaintiffs that it was able, knowledgeable, and sufficiently staffed to adequately care for Juestene Neal's conditions. Plaintiffs relied on this representation in selecting Defendants as health care providers to care for Juestene Neal.

10. Defendants formulated and/or were required to formulate various Focus Plans (Care Plans) to account for Juestene Neal's specifically identified conditions and potential complications related to her condition at admission, and any ensuing conditions that developed or would develop during her residence.

11. Further, knowing that Juestene Neal would need special care and assistance in her activities of daily living, The Springs admitted Juestene Neal into its Facility and under its care, and further represented to the Plaintiffs and indicated that Defendants' facility and services were equipped to meet her needs. Plaintiffs relied on Defendants' representation when choosing a facility and health service to assist with Juestene Neal's activities of daily living and provide appropriate care based upon her conditions.

12. Defendant, The Springs, provided what Plaintiffs believed and understood was skilled nursing care and ongoing assessments of Juestene Neal. It was further Plaintiffs' belief and understanding that Defendants were providing proper medical oversight and care through

**PLAINTIFFS' ORIGINAL PETITION & FIRST REQUEST FOR DISCOVERY**



properly trained and qualified individuals to assure that Juestene Neal was safe and properly cared for at all relevant times.

13. Despite these representations, Defendants failed to properly monitor and care for Juestene Neal, which ultimately led to her injuries, which included the Contraction of COVID-19.

14. Juestene Neal died on August 16, 2020, from respiratory failure and pneumonia. COVID-19 was Juestene Neal's underlying cause of death.

15. During Juestene Neal's treatment by The Springs, Plaintiffs relied on Defendants' representations and it was their belief and understanding that Juestene Neal was being properly cared for by all Defendants at all times. However, based upon Defendants' negligence and other tortious misconduct as alleged herein, Plaintiffs suffered substantial injury and damages including Juestene Neal's pain and suffering, and her ultimate death.

### E. MEDICAL NEGLIGENCE

16. Defendants are health-care providers licensed by the State of Texas to provide health care.

17. The subject injuries caused by the tortious misconduct of Defendants, and each of them, occurred while Defendants' agents were within the regular scope of their employment by Defendants, and under the doctrine of *respondeat superior*, Defendants may be held liable for the negligent acts of its agents, employees committed during the regular course and scope of their agency/employment even if the employer did not personally commit a wrong.

18. Defendants owed Juestene Neal a duty of care to exercise that degree of care required by the Plaintiff's known physical conditions, which duty of care these Defendants breached by the acts and omissions of negligence of Defendants and their agents, employees and representatives, including the following.

  a. Failing to observe, intervene, and care for Juestene Neal;

  b. Failing to provide the medical and nursing care reasonably required for the Plaintiff's known conditions;

  c. Failing to prevent and care for Juestene Neal to the extent she contracted COVID-19 while the facility was on a state mandated lockdown; and

  d. Failing to provide the appropriate supervision and training to its staff and personnel that were providing care to the Plaintiff including appropriate care related to Juestene Neal's treatment needs at all relevant times.

19. Defendants further violated applicable Federal and State statutes that were enacted to protect the class of individuals, like Juestene Neal, who reside in nursing facilities by, among other acts and omissions, failing to:

  a. Admitting or retaining a resident whose needs could not be met by the facility, in violation of 40 T.A.C. § 92.41(e)(1)

  b. Failed to ensure that Juestene Neal received and that the facility provided the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of Juestene Neal, as defined by and in accordance with the comprehensive assessment and plan of care, as required by 40 T.A.C. § 19.901;

  c Failing to maintain staffing so as to ensure that each resident receives the kind and amount of supervision and care required to meet her basic needs, as required by 40 T.A.C. § 92.41 (a)(3)(C)(V);



PLAINTIFFS' ORIGINAL PETITION & FIRST REQUEST FOR DISCOVERY PAGE 5

    d. Ensure that the individuals service plan or care plan be properly updated upon a significant change in condition, based upon an assessment of the resident, in accordance with 40 T.A.C. § 92.41(c)(2).

20. Based upon Defendants' failure to meet the standard of care as described herein, Plaintiffs would show that Defendants' negligence and otherwise tortious conduct was a proximate cause of damages suffered by the Plaintiffs and Juestene Neal as alleged herein.

### F. CORPORATE NEGLIGENCE

21. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

22. At all relevant times, Defendants jointly and singularly owed Plaintiff a legal duty to provide the same level of medical care that a reasonable, prudent, similar business that owns, operates, manages, and/or controls a skilled nursing facility would have provided under the same or similar circumstances, including but not limited to exercising that degree of care required by Plaintiffs' known physical and mental condition.

23. Defendants were required to ensure that their respective medical facilities had sufficient trained medical and nursing staff to provide the necessary medical treatment, monitoring, and supervision of all residents, including Plaintiff. Defendants had an obligation to sufficiently staff their respective medical facilities to ensure that each of their residents received the necessary care and services for them to attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with the resident's comprehensive assessment and plan of care. This included Plaintiff. This obligation required Defendants to sufficiently staff their respective medical facilities based not only

upon the number of residents residing in each facility, but also on the medical needs of those residents.

24. In addition, Defendants were required to properly capitalize the medical facility to ensure that the required medical and nurse staffing, medical treatment, monitoring, and supervision of all residents, including Juestene Neal, was provided.

25. Through Defendants' management and operational control of The Springs, Defendants engaged in numerous acts that affected resident medical care in the facility, including but not limited to (i) creating, setting, funding and or implementing budgets; (ii) monitoring resident acuity levels; (iii) setting and monitoring staffing levels of nursing and medical staff; (iv) controlling resident admissions and discharges; and (v) controlling the number of hours of direct care provided to residents of the facility by licensed nurses and Certified Nursing Aides (hereinafter "CNAs") employed by Defendants. Each of these managerial and operational functions had a direct impact on the quality of care delivered to Plaintiff at each facility and were taken in furtherance of operational and managerial objectives.

26. In addition, based on information and belief, Defendants substantially derived their revenue and profits through their operation of their medical facility from the receipt of taxpayer funds through federal and state funded Medicare and Medicaid programs. The rate at which a skilled nursing facility is compensated by Medicare for the for the delivery of skilled nursing care and services is normally based upon the "acuity" level of the residents in the facilities. "Acuity" is a term commonly used by healthcare providers and can be defined as the measurement of the intensity of nursing care required by a resident. Residents with higher acuity levels place higher demands for care and services on the skilled nursing

facility and its staff, and therefore, the care provided to these residences is compensated at higher levels.

27. Acuity levels are reflected in the resident's Resource Utilization Group score ("RUG") of the resident. RUG scores are contained in section Z of each resident's Minimum Data Set (hereinafter "MDS"). An MDS is required to be completed by every nursing home for every resident in a skilled nursing facility regardless of their payor status.

28. The Centers for Medicare and Medicaid Services (hereinafter "CMS") is the federal agency tasked with regulating all skilled nursing facilities in this country. Through the years, CMS has sponsored multiple studies to determine the amount of time that skilled nursing facility staff spent caring for residents, as well as other elements of resident care. As a consequence of these studies, CMS is able to set a number of hours of direct care that is expected to be provided to residents by licensed nurses and CNAs based on the skilled nursing facility's total acuity level. This expectation is expressed in terms of "hours per patient day" or "HPPD"

29. Based on information and belief, Defendants engaged in a systematic process of ensuring that their medical facility maintained the highest acuity levels possible while at the same time providing insufficient capitalization and staff to meet the individual needs of their residents during the time that Juestene Neal was a resident in the facility. This purposeful undercapitalization and understaffing directly resulted in the failure of their facility to provide the necessary and basic services that Juestene Neal needed to prevent her from sustaining the injuries pleaded herein.

PLAINTIFFS' ORIGINAL PETITION & FIRST REQUEST FOR DISCOVERY  PAGE 8



30. Defendants further breached their duty of care to Plaintiff by engaging in numerous improper acts and omissions constituting corporate negligence and ratification of corporate negligence, including but not limited to the following:

   a. Failing to ensure that appropriate levels of medical and nursing staff were maintained in their facility to provide necessary medical care, monitoring, and supervision of residents, including Juestene Neal;

   b. Staffing the facility below what was necessary to properly care for each of the facility's resident's needs, including those of Juestene Neal, based on the acuity level of all residents in each facility, including Juestene Neal;

   c. Failing to provide sufficient training and follow-up review of medical and nursing staff to ensure that the medical and nursing staff had the necessary training to provide the required medical care, monitoring, and supervision of residents, including Juestene Neal;

   d. Failing to ensure that sufficient funds were budgeted and expended on staff, training of staff, medical supplies, and medical care and treatment for Juestene Neal; and

   e. Failing to properly capitalize the facility to ensure that the required medical treatment, monitoring, and supervision of all residents, including Juestene Neal, was provided.

31. As outlined above, Defendants failed to meet the applicable standards of care that Defendants owed to Juestene Neal, and this failure was a proximate cause of severe damages suffered by Juestene Neal.

### G. GROSS NEGLIGENCE



PLAINTIFFS' ORIGINAL PETITION & FIRST REQUEST FOR DISCOVERY

32. The above cited acts and or omissions by Defendants directly and through their agents, representatives and employees, detailed above, amount to gross negligence because when viewed objectively from Defendants' standpoint at the time in question, such acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm, of which Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference and/or malice with regard to the rights, safety, or welfare of others.

33. Defendants had direct prior notice of Juestene Neal's vulnerabilities, yet failed to take any reasonable action to prevent the foreseeable events as alleged herein.

34 The acts and omissions of gross negligence attributed to the Defendants were committed and or ratified by vice principals of and or manages acting in managerial capacity By reasons of such conduct, Plaintiff is entitled to and therefore asserts a claim for punitive or exemplary damages in an amount sufficient to punish and deter Defendants and other like it for such conduct in the future pursuant to Texas Civil Practices & Remedies Code Section 41.001, et seq. and relevant case law.

### H. DAMAGES

35. Defendants' breach of duty proximately caused injuries and damages to the Plaintiffs, which resulted in the following damages:

    e. Physical pain in the past.

    f. Mental anguish in the past.

    g. Mental Anguish in the future.

    h. Disfigurement in the past.

    i. Physical impairment in the past.



  j. Medical expenses in the past.

  k Physical impairment in the past.

  l. Medical expenses in the past.

  m. Funeral and burial expenses.

## I. JURY DEMAND

36. Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

## J. CONDITION PRECEDENT

37. Plaintiffs would show that she has complied with the provisions set forth in Section 74.051 of the Civil Practice and Remedies Code, in that Defendants have been notified of Plaintiff's claim(s) prior to the filing of this lawsuit

## K. REQUEST FOR DISCLOSURE

38. Under Texas Rule of Civil Procedure 194, Plaintiffs requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## K. REQUESTS FOR PRODUCTION

1 Under Texas Rule of Civil Procedure 196 and Texas Civil Practices and Remedies Code Section 74.351(s), please produce all operating policies and procedures required by 40 TEX. ADMIN. CODE § 19.1920 and TEX. HEALTH & SAFETY CODE § 242.404, in effect January 1, 2015 to present

2. Under Texas Rule of Civil Procedure 196 and Texas Civil Practices and Remedies Code Section 74.351(s), please produce all written policies which govern the nursing care and related medical or other services provided, required by 40 TEX. ADMIN. CODE § 19.1922 and TEX. HEALTH & SAFETY CODE § 242.404, in effect January 1, 2015 to present.

PLAINTIFFS' ORIGINAL PETITION & FIRST REQUEST FOR DISCOVERY

3. Under Texas Rule of Civil Procedure 196 and Texas Civil Practices and Remedies Code Section 74.351(s), please produce all policies and procedures established and implemented by the governing body, required by 40 TEX. ADMIN. CODE § 19.1902 and TEX. HEALTH & SAFETY CODE § 242.404, in effect January 1, 2015 to present

4. Under Texas Rule of Civil Procedure 196 and Texas Civil Practices and Remedies Code Section 74.351(s), please produce the policy to identify, assess, and develop strategies to control risk of injury to residents and nurses associated with the lifting, transferring, reposition, or moving of a resident required by 40 TEX. ADMIN. CODE § 19.1917(e) and TEX. HEALTH & SAFETY CODE § 242.404, in effect January 1, 2015 to present.

## L. PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have judgment against the Defendants for:

   a. Economic damages in excess of the minimal jurisdictional amount of this Court;

   b. Non-economic damages in excess of the minimal jurisdictional amount of this Court;

   c. Pre-judgment and post-judgment interest as allowed by law;

   d. Costs of suit; and

   e. All such other and further relief the Court deems appropriate.

Respectfully submitted,
**THE CLINESMITH FIRM**

BY: s/ Curtis Clinesmith
Curtis Clinesmith
State Bar No. 24003401
Alexis Nicole Ondris



PLAINTIFFS' ORIGINAL PETITION & FIRST REQUEST FOR DISCOVERY

State Bar No. 24102869
325 N. St. Paul, 29th Floor
State Bar No. 24102869
325 N. St. Paul, 29th Floor
Morris, Texas 7520
972-677-7764 Telephone
972-390-0031 Facsimile
clinesmith@clinesmithfirm.com

*ATTORNEYS FOR PLAINTIFF*

